## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Thinesen, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JBC Legal Group, P.C.; Jack H. Boyajian, individually; Marv Brandon, individually; and NCO Group, Inc. d/b/a NCO Portfolio Management, Inc.,<br><br>Defendants. | Civil No. 05-518 (DWF/SRN)<br><br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

John H. Goolsby, Esq., and Thomas J. Lyons, Jr., Esq., Consumer Justice Center, counsel for Plaintiff.

Michael S. Poncin, Esq., Moss & Barnett, P.A., counsel for Defendants.

### Introduction

The above-entitled matter came before the undersigned United States District Judge on August 5, 2005, pursuant to a Motion to Dismiss brought by Defendants JBC Legal Group, P.C. ("JBC"), Jack H. Boyajian ("Boyajian"), Marv Brandon ("Brandon"), and NCO Group, Inc. ("NCO") (collectively referred to as "Defendants") and a Motion for Class Certification brought by Plaintiff Michael Thinesen. Specifically, Defendants ask the Court to dismiss Plaintiff's claims brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*; the Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. § 325F.68, *et seq.*; and the Minnesota Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. § 325D.44. Plaintiff opposes the Motion to Dismiss in all respects and brings his own Motion for Class Certification. For the reasons set forth below, the Court

grants in part and denies in part Defendants' Motion to Dismiss. Plaintiff's Motion for Class Certification is granted.

## Background

In 1997, Plaintiff issued a check to Pizza Hut that was later returned to Pizza Hut by Plaintiff's bank for insufficient funds. Sometime prior to April 2003, the debt was transferred to Defendants for collection. On March 13, 2004, Defendants sent a letter to Plaintiff requesting payment for the full amount of the original check ($13.00) and a "service charge" ($30.00) for the returned check. (Complaint, Exh. 1.) The letter listed the party the dishonored check had been issued to, the check number, the date the check was issued, the name of the bank that had issued the check, and the account information listed on the check.

The letter was sent on JBC letterhead with Boyajian, Brandon, and other JBC attorneys listed on the letterhead. The letter stated that "in addition to your check amount(s), service charge(s), interest and attorney's fees," Defendants would charge "statutory penalties equal to twice the amount of each check or $100.00 per check, whichever is greater, interest and reasonable attorney's fees after suit has been filed," if the requested amount was not paid within thirty days. (*Id.*) On the reverse side of the letter, NCO's privacy policy was outlined. (Affidavit of John H. Goolsby ("Goolsby Aff."), ¶ 2, Exh. A.) The privacy policy concluded by stating that JBC was servicing Plaintiff's account.

On April 16, 2004, Defendants sent a second letter to Plaintiff. The letter warned Plaintiff that because payment had not been received, Defendants' client "may now assume that you delivered the check(s) with intent to defraud . . . . " (Goolsby Aff., ¶ 3, Exh. B.) The letter requested payment in the amount of $143.00. The letter stated that failure to submit payment would force Defendants to "seek

appropriate relief before a court of proper jurisdiction." (*Id.*) In response to the letter, Plaintiff filed suit against Defendants alleging violations of the FDCPA, MCFA, and MDTPA.

## Discussion

### I. Defendants' Motion to Dismiss

#### A. Standard of Review

In deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court grants a motion to dismiss only if it is clear beyond any doubt that no relief could be granted under any set of facts consistent with the allegations in the Complaint. *Id.* The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The Court need not resolve all questions of law in a manner which favors the complainant; rather, the Court may dismiss a claim founded upon a legal theory which is "close but ultimately unavailing." *Id.* at 327.

#### B. Fair Debt Collection Practices Act Claim

The FDCPA makes it unlawful for debt collectors to use any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA also prohibits a debt collector from collecting any service charge "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Furthermore, the FDCPA is violated when a debt collector threatens to take "any action that cannot be legally taken." 15 U.S.C. § 1692e(5).

Under the FDCPA, a debt collector may not impose a service charge unless: (1) the agreement creating the debt expressly authorizes the charge; or (2) the charge is permitted by law. 15 U.S.C. § 1692f(1). In this case, neither party has claimed that the charge was expressly authorized, so the Court must look to applicable state law. Until 2001, Minnesota law provided, in relevant part, that:

Whoever issues any check that is dishonored is liable for the following penalties:

(a) A service charge of up to $20, or actual costs of collection not to exceed $30, may be imposed immediately on any dishonored check, regardless of mailing a notice of dishonor, if notice of the service charge was conspicuously displayed on premises when the check was issued. If a law enforcement agency obtains payment of a dishonored check, a service charge of $25 may be imposed if the service charge is retained by the law enforcement agency for its expenses. Only one service charge may be imposed under this paragraph for each dishonored check.

(b) If the amount of the dishonored check is not paid within 30 days after the payee of holder has mailed notice of dishonor pursuant to section 609.535 and a description of the penalties contained in this subdivision, whoever issued the dishonored check is liable to the payee or holder of the check for:

(1) the amount of the check, the service charge as provided in paragraph (a), plus a civil penalty of up to $100 or the value of the check, whichever is greater. The civil penalty may not be imposed until 30 days following the mailing of the notice of dishonor. A payee or holder of the check may make a written demand for payment of the civil liability by sending a copy of this section and a description of the liability contained in this section to the issuer's last known address. Notice as provided in paragraph (a) must also include notification that additional civil penalties will be imposed for dishonored checks for nonpayment after 30 days;

(2) interest at the rate payable on judgments pursuant to section 549.09 on the face amount of the check from the date of dishonor; and

      (3)      reasonable attorney fees if the aggregate amount of dishonored checks issued by the issuer to all payees within a six-month period is over $1,250.

Minn. Stat. § 332.50, subd. 2(a-b) (2000). Therefore, a debt collector could immediately collect face value of the dishonored check and either a flat "service charge" of $20, or up to $30 provided that the debt collector could show that amount represented the "actual costs of collection." Section 332.50 was amended in 2001 to raise the permissible service charge to $30, but the amendment applies only to checks issued on or after August 1, 2001. 2001 Minn. Sess. Law Chapter 204 - S.F. No. 103, Sec. 3.

In his Complaint, Plaintiff asserts that Defendants' actions in attempting to collect on the debt violated state and federal law. Specifically, Plaintiff contends that Defendants violated the FDCPA by: (1) attempting to collect a $30 service charge when Minnesota law capped service charge fees at $20; (2) attempting to collect more than $100 in civil penalties when Minnesota law capped civil penalties at that amount; (3) threatening to take legal action to recover attorney fees that Defendants could not legally recover; (4) threatening litigation on a time-barred debt; (5) accusing Plaintiff of having an intent to defraud Pizza Hut; and (6) failing to identify the creditor.

Defendants assert that their actions in attempting to collect on the debt did not violate the FDCPA. First, Defendants contend that they need not make any claim or showing that the $30 "service charge" requested in the initial letter was the actual cost of collection. Instead, Defendants assert that the burden is on the Plaintiff to prove that Defendants' actual cost of collection was less than $30. Because Plaintiff has not alleged that Defendants' collection costs were less than $30, Defendants assert that Plaintiff has not stated a valid FDCPA claim.

Second, Defendants assert that they did not violate the FDCPA because the amount of money requested by Defendants in the initial letter complies with Minnesota law. Defendants point to the fact that the Uniform Commercial Code, as adopted into law in Minnesota, expressly permits recovery of the face value of a dishonored check plus incidental damages. *See* Minn. Stat. 336.2-709(1). Defendants also claim that the "actual costs of collection" as discussed in Minn. Stat. § 332.50(a) must be considered a form of "service charge" as that term is used in Minn. Stat. § 332.50(b)(1). Thus, Defendants assert that they were entitled to collect the face value of the check ($13), a service charge equal to the actual costs of collection or $30, whichever was less, and a civil penalty of up to $100.

Third, Defendants contend that they did not violate the FDCPA by threatening to sue for attorney fees. Instead, Defendants assert that their letter to Plaintiff only indicated that he "may be subject to" interest and attorney fees. Since Minnesota law allows the holder of a dishonored check to recover attorney fees in certain instances, Defendants contend that their letter merely appraised Plaintiff of Minnesota law. *See* Minn. Stat. § 332.50(b)(3) (1999).

Fourth, Defendants assert that they did not violate the FDCPA by threatening litigation on a potentially time-barred debt. Defendants point out that the Eighth Circuit has never directly addressed the issue of whether threatening litigation on a time-barred debt is a violation of the FDCPA. Defendants do concede that district courts in other circuits have found such actions to be a violation of the FDCPA. *See Freyermuth v. Credit Bureau Serv., Inc.,* 248 F.3d 767, 771 (8th Cir. 2001) (reviewing how the issue had been resolved by district courts around the country). However, Defendants assert that their claims against Plaintiff were valid, therefore, Defendants were entitled to raise the claims. Any affirmative defenses held by Plaintiff, such as a statute of limitations, could be

6

raised in response but would not negate the existence of Defendants' claims. Thus, Defendants contend that their actions in threatening litigation were not in violation of the FDCPA.

Fifth, Defendants assert that the April 16, 2004, letter sent to Plaintiffs was neither abusive nor misleading. Defendants contend that the language in the letter merely set out the legal remedies that Defendants could seek against Plaintiff. Defendants also note that both letters sent to Plaintiff expressly identified Pizza Hut as the party to whom the dishonored check had been written.

After reviewing Plaintiff's Complaint, the Court finds that Plaintiff has stated a valid claim pursuant to the FDCPA. The Court finds that Plaintiff's allegations, if proven, would establish that Defendants attempted to obtain more money in collection costs than was allowed by Minnesota statute. Specifically, Defendants attempted to collect a $30 "service charge" when Minnesota statute capped service charges at $20. Plaintiff has also alleged that Defendants attempted to collect more than the maximum amount allowed for recovery on a dishonored check once notice had been provided.

The Court also finds that Defendants likely violated the FDCPA by threatening litigation on a time-barred debt. Defendants spend much of their briefing on this issue discussing articles drafted by attorneys on the issue of pursuing time-barred claims in other contexts. The Court questions the ethics of pursuing such claims and the Court notes that attorneys have been sanctioned for that very practice. The Court is even more skeptical of the opinions contained in the articles submitted by Defendants in light of the fact that this Court is to apply an "unsophisticated consumer" standard in evaluating debt collection letters. *Duffy v. Landberg,* 215 F.3d 871, 873 (8th Cir. 2000). Therefore, the Court denies Defendants' Motion to Dismiss the FDCPA claim.

**C.    Fair Debt Collection Practices Act Claims Against Boyajian and Brandon**

Defendants ask the Court to dismiss the FDCPA claims brought against Boyajian and Brandon in their individual capacities. In support of their request, Defendants cite to *White v. Goodman* wherein the Seventh Circuit held that the FDCPA does not contemplate personal liability for shareholders or employees of debt collection companies who act on behalf of those companies. 200 F.3d 1016, 1019 (7th Cir. 2000). In contrast, Plaintiff cites to a case from the District of Connecticut where Boyajian himself was held directly liable for violating the FDCPA and Brandon was denied summary judgment on the same issue. *See Goins v. JBC & Assocs., P.C.,* 352 F. Supp. 2d 262 (D. Conn. 2005).

After reviewing the Complaint and the cases cited by the parties, the Court finds that dismissing the FDCPA claims against Boyajian and Brandon is not appropriate at this time. Plaintiff has pleaded that Boyajian and Brandon were JBC employees and that they were the individuals responsible for JBC's debt collection efforts. The Court finds that Plaintiff's allegations are sufficient such that Boyajian and Brandon should remain defendants in their individual capacities until discovery on the issue has taken place.

### D. Minnesota Consumer Fraud Act

The MCFA prohibits:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby.

Minn. Stat. 325F.69, subd. 1.

Plaintiff contends that collection efforts fall within the ambit of the MCFA.  Plaintiff primarily relies on a decision to that effect decided by the Iowa Supreme Court in interpreting Iowa's consumer protection laws.  *See Miller v. Cutty's Des Moines Camping Club, Inc.,* 694 N.W.2d 518 (Iowa 2005).  Defendants, on the other hand, contend that the MCFA is inapplicable in situations arising from debt collection actions.  In support of this assertion, Defendants rely on a case from this district wherein the MCFA was found inapplicable to a collection action because the court held that there was no nexus between the alleged fraud and the sale and that the causation element of an MCFA claim requires that reliance on the defendant's statement be proven.  *Reno v. Supportkids, Inc.,* No. Civ. 01-2331 (JNE/JSM), 2004 WL 828150, at *4 (D. Minn. Apr. 13, 2004).

The Court finds that Plaintiff's MCFA claim must be dismissed.  Plaintiff purchased goods from Pizza Hut in 1997.  Six years later, Defendants attempted to collect on the dishonored check.  The Court finds nothing in the facts underlying this case or in Plaintiff's Complaint that establishes the necessary nexus between Defendants' allegedly actionable conduct and Pizza Hut's initial sale of goods.  Accordingly, the Court dismisses Plaintiff's MCFA claim.

### E. Minnesota Deceptive Trade Practices Act

Plaintiff also raises claims against Defendants pursuant to the MDTPA based on the same issues underlying his FDCPA claim.  Plaintiff asserts Defendants violated the MDTPA by engaging in conduct that misrepresented the amount that was due on the dishonored check and causing a "likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another."  Minn. Stat. § 325D.44, subd. 1(3).

Defendants contend that the MDTPA is inapplicable to collection matters. In support of this assertion, Defendants cite to a case from this district wherein the court questioned whether the MDTPA was applicable to collection matters. *Maneval v. Jon R. Hawks, Ltd.,* No. Civ. 971935 (JRT/FLN), 1999 WL 33911242, at *6 (D. Minn. Oct. 13, 1999). Defendants also ask the Court to dismiss Plaintiff's claim regarding alleged misrepresentations concerning NCO's involvement in the matter. Defendants point out that this issue was never raised in Plaintiff's Complaint.

The Court finds that Plaintiff's MDTPA claim must be dismissed. The MDTPA lists various types of consumer transactions that fall within its ambit, including the use of deceptive or confusing product labeling, trade names, and advertisements. Minn. Stat. § 325D.44, subd. 1. The MDTPA also allows individuals to sue for conduct that is similar to that listed in the statute. Minn. Stat. § 325.44, subd. 1(13). However, Defendants' collection activities do not appear to be similar to the statute's listed activities because Defendants' collection letters do not make representations regarding goods or services.[1] The Court also agrees with Defendants insofar as they raise the issue of Plaintiff's failure to raise the issue concerning NCO's involvement in the matter. Thus, the Court grants Defendants Motion to Dismiss Plaintiff's MDTPA claim.

---

[1] The only collection activity that is expressly barred by the MDTPA occurs when a debt collector in "attempting to collect delinquent accounts, implies or suggests that health care services will be withheld in emergency situations." Minn. Stat. § 325D.44, subd. 1(12). The Court finds that this activity is of a distinctly different and dissimilar nature than the collection matter at issue in this case such that the MDTPA's catch-all provision is inapplicable.

**F.     Claims Against NCO**

Plaintiff named NCO as a defendant because NCO's privacy policy was included with the initial collection letter sent to Plaintiff. Defendants contend that NCO should not have been named a party to this suit because NCO was not involved in the collection of Plaintiff's debt. After reviewing the record, the Court agrees with Defendants that NCO was not a party to the efforts to collect on Plaintiff's debt. Accordingly, NCO is dismissed from the underlying suit.

**II.    Plaintiff's Motion for Class Certification**

Based on Defendants' collection activities as previously discussed, Plaintiff seeks relief on behalf of himself and other similarly situated individuals. Specifically, Plaintiff seeks certification of the following Plaintiff Class:

> All consumers, as that term is defined by 15 U.S.C. § 1692a(3), with an address in the state of Minnesota to whom letters in the form of Complaint Exhibit 1 were sent in an attempt to collect a debt incurred for personal, family, or household purposes which were not returned undelivered by the U.S. Post Office during the one year period prior to the filing of the complaint in this action.

(Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Class Certification, at 2.)

**A.    Standard of Review**

A plaintiff requesting class certification must satisfy both "implicit" and "explicit" legal requirements. Plaintiffs must first establish that a defined class exists and that the class representative falls within that class. *See Jenson v. Eveleth Taconite Co.,* 139 F.R.D. 657, 659-60 (D. Minn. 1991) (citing *East Texas Motor Freight Sys. Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977)). Once a plaintiff has satisfied these implicit requirements, the plaintiff must then establish his or her entitlement to class certification under Rule 23.

In determining the propriety of class action certification, the question is not whether the plaintiff has stated a cause of action or will ultimately prevail on the merits, but rather whether the requirements of Rule 23 are met. *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 178 (1974). Rule 23(a) of the Federal Rules of Civil Procedure sets forth the threshold requirements for certification of a class. Class certification is appropriate where:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to the threshold requirements of Rule 23(a), a class action is only appropriate if one of the circumstances set forth in Rule 23(b) is also present. *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 614 (1997). Plaintiffs seek certification under Rule 23(b)(2) or Rule 23(b)(3). Rule 23(b)(2) applies to situations when class-wide injunctive or declaratory relief is appropriate. Rule 23(b)(3) allows for certification of a class when common questions of law or fact predominate over individual questions and a class action is a superior method for resolving the claims.

The party seeking class certification bears the burden of establishing each prerequisite element to certification. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161 (1982). A court will only certify a class if, after "rigorous analysis," the court is satisfied that all of Rule 23's requirements have been met.

### 1.     Rule 23(a) Requirements

#### a.     Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The standard of impracticability does not mean that joinder must be impossible, but only that the difficulty or inconvenience must be considerable. *Jenson,* 139 F.R.D. at 664. A court that is determining whether joinder is practicable should consider not only the size of the proposed class, but also the nature of the action, the size of the individual claims, and the inconvenience of trying multiple suits. *Sonmore v. CheckRite Recovery Serv., Inc.,* 206 F.R.D. 257, 261 (D. Minn. 2001).

Plaintiff asserts that Defendants' use of a form letter indicates that the class of individuals affected by Defendants' conduct is particularly large. Plaintiff also points out that the putative class members' claims are likely to be relatively small and that trying each of their cases would result in an inefficient use of judicial resources. In contrast, Defendants assert that Plaintiff has failed to indicate the expected class size. Defendants also contend that the FDCPA provides a sufficient vehicle for individual class members to bring their own suits.

The Court finds that Plaintiff has demonstrated that joinder of all putative class members would be impracticable. Defendants appear to have sent out thousands of collection letters in Minnesota during the period of time in question. Each of the putative class members is an individual and joinder of all of them would likely be nearly impossible. As a result, the Court finds that Plaintiff has established that Rule 23(a)'s numerosity requirement has been met.

### b. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Generally, Rule 23(a)(2) is understood to require only that the actions giving rise to the legal claims affect all class members. *Lockwood Motors, Inc. v. General Motors Corp.,* 162 F.R.D. 569, 575 (D. Minn. 1995). As long as the claim arises out of the same legal theory, "the presence of factual variations is normally not sufficient to preclude class action treatment." *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 831 (8th Cir. 1977).

Plaintiff contends that common issues of fact and law predominate among putative class members' potential suits because all of the claims arise from the sending out of form letters to class members. Plaintiff does concede that some factual differences exist among putative class members, but Plaintiff points out that the majority of the legal issues involve considerations of Minnesota statute and the FDCPA. Defendants' primary response is that the factual differences among the cases of putative class members make individual suits superior to a single class action.

The Court finds that Plaintiff has established commonality of factual and legal issues among the putative class members. The actions that Plaintiff is complaining of, namely that Defendants sent out form letters misrepresenting the amount owed for dishonored checks, seems to the Court to raise similar issues for every putative class member that received one of these collection letters. The Court also believes that sub-classes could be created after discovery has taken place to deal with factual or legal differences among the class members. Accordingly, the Court finds that Plaintiff has established this factor.

### c.  Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims and defenses of the other class members. "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995).

Plaintiff asserts that his claims are typical of those of the class. As with other putative class members, Plaintiff has claims against Defendants arising from the collection letters. Defendants, on the other hand, continue to assert that the differences between the putative class members are so significant that they cannot be overcome.

The Court has considered Plaintiff's claims and finds them typical of those of the putative class. Plaintiff's claims are grounded in Defendants' collection efforts and every putative class member's claims will arise from those same types of actions. Thus, the Court finds that Plaintiff has established the typicality requirement.

### d.  Adequacy

Whether a representative will "fairly and adequately protect the interests of the class" depends on whether: (1) a class representative has common interests with the members of the class; and (2) a class representative will prosecute the interests of the class through counsel qualified to do so. *Sonmore,* 206 F.R.D. at 262-63.

Plaintiff contends that he will fairly and adequately represent the class as his claims are similar to those of other class members. Plaintiff's counsel also represents to the Court that it is experienced in litigating class actions and individual cases under state and federal consumer protection statutes.

16

Defendants question the ability of Plaintiff's counsel to adequately prosecute a class action. Specifically, Defendants point to the fact that Plaintiff's counsel states that they are experienced in prosecuting Fair Credit Reporting Act cases, but makes no specific mention of experience in handling FDCPA cases.

The Court finds that Plaintiff will adequately protect the interests of the class. Plaintiff's claims are similar to those of the putative class members and Plaintiff has a legitimate interest in the matter and is likely to share in any monetary recovery from the action. The Court also finds that Plaintiff's counsel is qualified to prosecute this action. The Court has reviewed the pleadings prepared by Plaintiff's counsel and witnessed Plaintiff's counsel at the hearing on this matter. Based on those experiences, the Court finds that Plaintiff's counsel can adequately represent the class. Therefore, the Court finds that Plaintiff has established the adequacy requirement set out in Rule 23(a)(4).

### 2. Rule 23(b)

After having established the Rule 23(a) prerequisites, a plaintiff is entitled to have his or her motion for class certification granted only if one of the three conditions outlined in Rule 23(b) is satisfied.[2] Rule 23(b) provides for class certification if:

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members

---

[2] Plaintiff does not seek class certification under Rule 23 (b)(1).

> of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Plaintiffs seek certification under either Rule 23(b)(2) or Rule 23(b)(3).

### a. Rule 23(b)(3)

Plaintiff asserts that the predominance factor is established as the common legal questions in the case overwhelm the individual issues. Plaintiff contends that the factual evidence will be common to all class members' claims because the basis of the suit is Defendants' form collection letters. Plaintiff also claims that even the damages issues are shared as class members would be entitled to similar, if not identical, damages under the FDCPA.

Plaintiff also asserts that a class action would be a far superior method of dealing with the putative class members' claims. Plaintiff notes that the individual claims are relatively small and, as such, most class members would have a lesser interest in controlling the litigation. Plaintiff also contends that a class action would be superior in this case because it would work to conserve judicial resources and a class action is generally a better method of enforcing consumer protection statutes.

Defendants continue to assert that the factual and legal issues differ significantly from class member to class member. In addition, Defendants point out that if the individual class members would bring their own suits under the FDCPA, the class members would likely be able to retain an attorney on a contingency basis and, if successful, recover more via their individual actions. Finally, Defendants note that the State of Minnesota commenced a suit against JBC in state court alleging violations of the FDCPA, MCFA, and the MDTPA.

The Court has considered the arguments presented by the parties and finds that common questions predominate and that a class action is superior to other available methods for adjudication of the underlying issues. As previously discussed, the Court finds that the shared factual and legal issues of the putative class members' claims significantly outnumber the differences in their claims. The Court also finds that a class action would be a superior method of adjudicating these claims because the class members are less likely to seek control over the litigation given that their claims are relatively small in size. A class action would also serve to protect judicial resources. Thus, the Court grants Plaintiff's Motion for Class Certification.

## Conclusion

For the reasons stated, **IT IS HEREBY ORDERED:**

1. The Motion to Dismiss (Doc. No. 16) brought by Defendants is **GRANTED IN PART** and **DENIED IN PART**, as follows:

   a. The Motion to Dismiss (Doc. No. 16) brought by Defendants is **GRANTED** as to Plaintiff Michael Thinesen's Minnesota Consumer Fraud Act and Minnesota Deceptive Trade Practices Act claims.

   b. The Motion to Dismiss (Doc. No. 16) brought by Defendants is **DENIED** as to Plaintiff Michael Thinesen's Fair Debt Collection Practices Act claim.

2.      The Motion for Class Certification (Doc. No. 3) brought by Plaintiff Michael Thinesen is **GRANTED.**

Dated: September 26, 2005            s/Donovan W. Frank
                                     DONOVAN W. FRANK
                                     Judge of United States District Court